IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| | ) |
| v. | )    1:14mj414 |
| | ) |
| JUAN ANTONIO PENA-TORRES | ) |
| | ) |
| Defendant. | ) |

## M E M O R A N D U M   O P I N I O N

This matter comes before the Court on Defendant Juan Antonio Pena-Torres's ("Defendant") Motion for Revocation of Detention Order [Dkt. 14].  The Court **denied** the motion from the bench and now offers this Memorandum Opinion setting forth the reasons for its ruling below.

### I. Background

Based on the *de novo*[1] hearing conducted in this matter on September 11, 2014, the Court finds the relevant facts to be as follows:

On August 18, 2014, Defendant was charged in a criminal complaint [Dkt. 1] with possessing a firearm with an obliterated serial number in violation of 18 US.C. § 922(k). According to Defendant, he received the firearm as collateral

---

[1] Pursuant to 18 U.S.C. § 3145(b), a defendant detained by a magistrate judge "may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order.  The motion shall be determined promptly."  Such review is *de novo*. *United States v. Clark*, 865 F.2d 1433, 1436 (4th Cir. 1989) (citations omitted).

for work performed on a vehicle.  (Def.'s Mot. [Dkt. 14] at 5.)

When the vehicle's owner failed to pay for repairs, Defendant

told an acquaintance he wished to sell the firearm.  (*Id.*)  That

acquaintance, who was a confidential source for the Federal

Bureau of Investigation ("FBI"), contacted law enforcement, and

a time and date for sale was arranged for August 15, 2013.[2]

(*Id.*)  During the firearm sale, Defendant also sold fourteen

grams of powder cocaine to Detective Sean McManus, an undercover

officer for the Herndon (Virginia) Police Department.  (Gov't's

Aff. [Dkt. 2] ¶ 16.)[3]

An arrest warrant was issued for the Defendant on

August 18, 2014 [Dkt. 5] and he was arrested the next day [Dkt.

6].  Defendant appeared before United States Magistrate Judge

Teresa C. Buchanan on August 20, 2014 for his initial

appearance.  ([Dkt. 7].)  Judge Buchanan granted the

government's request for pre-trial detention and appointed

defense counsel.

Defendant's preliminary hearing was held on August 22,

2014.  ([Dkt. 9].)  The pre-trial services report recommended

---

[2] The confidential source has not been arrested related to this investigation, but does have a criminal history.  This history includes felony convictions and misdemeanor drug convictions.  (Gov't's Aff. [Dkt. 2] ¶ 12.)   After starting as an FBI source, the source was arrested for failure to appear in court for a probation violation.  (*Id.*)  The confidential source is currently cooperating with law enforcement in exchange for some benefit in the form of dismissal of charges and/or reduction in probation term as well as possible monetary consideration.  (*Id.* ¶ 13.)
[3] Defendant maintains that the purported firearm sale and drug transaction were two separate events.  (Def.'s Mot. at 5-6.)

release subject to a number of conditions. (Def.'s Mot. at 1.)

One such condition was third-party custody with Glenda Lopez

Cordova, Defendant's long-term companion and the mother of two

of his children. (*Id.* at 1.) Judge Buchanan found that there

was a serious risk that Defendant would not appear for trial and

would endanger the safety of the community if he were released.

(Detention Order Pending Trial [Dkt. 10] at 2.) He was remanded

to custody.

Defendant moved for reconsideration of his detention

order. ([Dkt. 11].) He proposed his former brother-in-law as

an alternate third-party custodian. (Gov't's Resp. [Dkt. 15] at

2.) The government objected on the basis of the ex-brother-in-

law's criminal history. (*Id.* at 2.) Judge Buchanan denied the

motion. ([Dkt. 13].) Defendant then filed the instant motion

on September 8, 2014. Having been briefed and argued,

Defendant's motion is now properly before the Court.

## II. Analysis

Pursuant to the Bail Reform Act, a judicial officer

shall detain a defendant pending trial if he finds that "no

condition or combination of conditions will reasonably assure

the appearance of the person as required and the safety of any

other person in the community." 18 U.S.C. § 3142(e)(1).[4] In

---

[4] "The facts that the judicial officer uses to support a finding pursuant to subsection (e) that no condition or combination of conditions will reasonably assure the safety of any other person and the community shall be supported by

determining whether there are release conditions that can meet

that standard, the judicial officer shall consider the following

factors:

> (1) the nature and the circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>
> (2) the weight of evidence against the person;
>
> (3) the history and characteristics of the person, including –
>
> > (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
> >
> > (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State or local law; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

---

clear and convincing evidence." 18 U.S.C. § 3142(f)(2)(B). The government must prove by a preponderance of the evidence that no combination of conditions will reasonably assure the defendant's presence at future court proceedings. *United States v. Stewart*, 19 Fed. App'x 46, 48 (4th Cir. 2001).

18 U.S.C. § 3142(g).  Nothing in the Bail Reform Act "shall be construed as modifying or limiting the presumption of innocence."  18 U.S.C. § 3142(j).

With these considerations in mind, the Court turns to the § 3142(g) factors.[5]

### A. Nature and Weight of the Offense & Weight of the Evidence

Defendant is charged with violating 18 U.S.C. § 922(k) for allegedly knowingly possessing a handgun with obliterated serial numbers.  The maximum penalty for violating this statute is five years imprisonment.  18 U.S.C. 924(a)(1)(B).  If convicted of this offense, Defendant's guideline range would likely be 21-27 months.[6]  Defendant contends that the sale of a single firearm a year ago does not rise to the level of offense required for pre-trial detention.  Furthermore, Defendant maintains that the government cannot prove he had knowledge of the destruction of the serial numbers, as there is no mention of them on the undercover officer's recording of the transaction.

---

[5] Contrary to the government's assertion, the rebuttable presumption of pre-trial detention is not implicated on these facts.  (Gov't's Resp. [Dkt. 15] at 4-5.)  Section 3142(e)(3)(B) states the presumption applies "if the judicial officer finds that there is probable cause to believe that the person committed . . . an offense under section 924(c) . . . of this title." There has not been a criminal complaint nor an indictment on the § 924(c) charge, though the grand jury was scheduled to hear evidence on that and other potential charges against Defendant on September 11, 2014.  Therefore, there is not yet probable cause to believe that Defendant violated § 924(c), so applying the presumption would be premature.

[6] Pursuant to U.S.S.G. § 2K2.1(a)(7) & (b)(4), the applicable offense level would likely be 16.  As Defendant only has prior misdemeanor convictions that resulted in suspended sentences, his criminal history would likely be I (1 point for the 2012 conviction, which per § 4A1.2(a)(3) counts as a prior sentence.  The 2001 conviction would not be counted per § 4A1.2(e)(3).).

(Def.'s Mot. at 5.)  Such knowledge of the alteration is a

required element of 18 U.S.C. § 922(k).  *United States v.*

*Sullivan*, 455 F.3d 248, 261 (4th Cir. 2006).

Detective Sean McManus, the undercover officer who

worked this case, testified at the detention hearing.  He stated

that he arrived at HT Motorsports, Defendant's business, on

August 15, 2013.  He and Defendant negotiated over the price of

the gun.[7]  Detective McManus asked if the gun was "hot," meaning

it had been used in the commission of other crimes or was

stolen.  Defendant answered no.  The sequence of events for the

transaction was as follows.  Detective McManus took the gun from

Defendant.  Defendant gave the detective fourteen grams of

cocaine.  In return, Detective McManus gave Defendant $1400.00

cash, $650.00 for the gun and $750.00 for the cocaine.

Detective McManus also stated that two weeks after this

exchange, he bought another fourteen grams of cocaine from

Defendant.

Detective McManus had some interactions with Defendant

prior to the August 15 sale.  In June or July of 2013, Detective

McManus met with Defendant about buying a shotgun from

Defendant.  Ultimately, that sale was not completed.  On

---

[7] According to the government's affidavit, law enforcement learned about the gun through their confidential source.  While at HT Motorsports, Defendant showed the source "a gun without a serial number and claimed that there were 'bodies on it.'"  (Gov't's Aff. ¶ 10.)  The informant understood that to mean that the firearm had been used in the commission of multiple murders.  (*Id.*)

separate occasions in the summer of 2013, Detective McManus's

informant purchased drugs in transactions orchestrated by

Defendant.[8]  After August 2013, Detective McManus indicated that

he could not arrange subsequent transactions with Defendant

because of conflicting schedules.  He did not know whether

Defendant engaged in any illegal activity after August 2013.

As to the time lag between the charged conduct and

Defendant's arrest, the government's attorney stated at the

hearing that there were two factors that caused the delay.

First, a new FBI agent was assigned to the case and the agent

needed time to get up to speed on the investigation.  Second,

other investigations were pending against Defendant.  State

authorities were investigating whether HT Motorsports was

actually a "chop shop," a front for processing stolen vehicles

and stolen auto parts.  There also were reports of gang

involvement at the shop, including selling guns through the

store and possible prostitution.

After considering the parties' arguments and

supporting facts, the Court finds that the nature and

seriousness of the offense and the weight of the evidence tip in

favor of detaining Defendant.

**C. History and Characteristics of the Person**

---

[8] Detective McManus testified he was not personally present for those
transactions, but that they were recorded by the informant.  Detective
McManus stated a man named "Victor" delivered the drugs to the informant and
that these transactions were arranged by Defendant.

Defendant was born in El Salvador and came to the United States in 1990. (Pre-Trial Servs. Rep. at 1). Since arriving, Defendant has not traveled outside the United States; in fact, he has remained in Northern Virginia for several years. (*Id.*) Defendant is a lawful permanent resident residing in Dumfries, Virginia with his long-time companion Cordova, their two children, his brother, and his nephew. (Def.'s Mot. at 6.) His mother is also living with them, but according to Cordova she is visiting from El Salvador and had plans to return there at the end of August. (Pre-Trial Servs. Rep. at 2.)

In addition to the family he lives with, he is in weekly contact with a second brother who lives in Woodbridge, Virginia. (*Id.* at 1.) He is not in contact with his father, who lives in Arlington, Virginia. (*Id.*) Defendant and Cordova have been together seven years, and, as noted, have two children, ages 1 and 3. (*Id.* at 2.) Defendant has two additional children living in Manassas, Virginia: a 10-year-old child from a previous relationship with whom he is in weekly contact and a seven-month old child from a third relationship with whom he has no contact. (*Id.* at 2.) At the time of the pre-trial report, Cordova was unaware of the seven-month-old child. (*Id.* at 2.)

Defendant owns and operates his own auto body shop, HT Motorsports, in Manassas, Virginia. (*Id.* at 2.) He has

approximately two employees working for him.  (*Id.* at 2.)  The

government paints a different picture of HT Motorsports,

characterizing it as a "chop shop."  (Gov't's Aff. ¶ 9.)

According to Detective McManus, Defendant was storing cocaine in

the office at HT Motorsports.  It also was the site of the

Defendant's sale of the gun at issue in this case.

Additionally, the current and former locations of the shop may

have been home to gang activity.  Defendant denies he is a

member of the MS-13 gang and likewise denies that the gang held

meetings in the body shop's prior location.  (Gov't's Resp. at

4.)[9]  However, Defendant represented to the government that gang

members "just hung around" the shop and "drank and did lines of

cocaine."  (*Id.* at 4.)

     Defendant attended high school, though it is not clear

whether he graduated.  (Def.'s Mot. at 6.)  His monthly income

from is $13,000.00.  (Pre-Trial Servs. Rep. at 3.)  After

deducting expenses, his monthly cash flow is estimated to be

$5,880.00.  (*Id.*)  Defendant is in good physical health and has

no history of mental health treatment, substance abuse, or

substance abuse treatment.  (*Id.*)

     Defendant has three prior criminal convictions, all

misdemeanors.  In 2001, he was charged in Virginia state court

---

[9] At the hearing, the government's lawyer stated Defendant shot himself in the leg to end his membership in MS-13.

with carrying a concealed weapon.   He was found guilty and

received a suspended sentence of thirty days.  (Pre-Trial Servs.

Rep. at 3.)  Four years later, in 2005, he was charged with

driving while suspended, though the charges were not prosecuted.

(*Id.*)  In 2012, Defendant was charged with driving while

intoxicated.  He was found guilty and received a thirty-day

suspended sentence.  In addition, his driver's license was

suspended for twelve months.  (*Id.*)  According to automated

records from the Virginia Department of Motor Vehicles,

Defendant's license remains suspended.  (*Id.*)

In the year since the alleged firearm sale, Defendant

has not been charged with any additional crimes.  (Def.'s Mot.

at 4.)  Defendant indicated he had a .45 caliber firearm in a

closet at home; Cordova told the pre-trial services officer she

was unaware of its presence there.  (Pre-Trial Servs. Rep. at

2.)

Defendant has family ties to Northern Virginia.  It

appears that he is in active contact with some of his family

members, though he has not been entirely forthcoming with his

live-in girlfriend.  However, he also has family ties to El

Salvador.  Additionally, conviction of a felony, including the

instant charge, would jeopardize Defendant's status as a legal

permanent resident.  Defendant is also aware of the charges

before the grand jury.  The pending charges and the threat

10

conviction poses to his legal status in this country increase the risk that Defendant will not return for trial. Consequently, the Court finds that Defendant's risk of flight is supported by a preponderance of the evidence.

### D. Nature and Seriousness of the Danger to the Community if Released

Defendant also poses a safety risk to the community. There is only one charged offense and Defendant has not been charged with additional crimes in the last year. However, a cloud of substantial illegal activity surrounds Defendant. First, Detective McManus's testimony demonstrates that Defendant sold drugs on more than one occasion. Second, the government's attorney stated that the confidential source said Defendant had sold several weapons to MS-13. To date, two of the firearms allegedly sold by Defendant remain unaccounted. Third, it appears his business is not entirely above board. Finally, agents were unable to find the gun Defendant admitted he kept in his house. Considering the foregoing, the government has shown by clear and convincing evidence that "no condition or combination of conditions will reasonably assure the safety of any other person and the community."

## III. Conclusion

For the foregoing reasons, the Court will deny Defendant's

Motion for Revocation of Detention Order.  An appropriate order

will issue.


_____ /s/
September 12, 2014              James C. Cacheris
Alexandria, Virginia    UNITED STATES DISTRICT COURT JUDGE

12